**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENNIS JUSTIN WEAVER | : | |
| | : | |
| Appellant | : | No. 1839 MDA 2024 |

Appeal from the Judgment of Sentence Entered November 26, 2024
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0001006-2023

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:              **FILED OCTOBER 6, 2025**

Dennis Justin Weaver ("Appellant") appeals from the judgment of sentence entered by the Court of Common Pleas of Cumberland County after a jury convicted him of felony Indecent Assault, felony Corruption of Minors, and misdemeanor Indecent Assault.  After careful review, we affirm.

Appellant was charged with one count of third-degree felony Indecent Assault,[1] one count of third-degree felony Corruption of Minors,[2] and one count of first-degree misdemeanor Corruption of Minors[3] stemming from allegations that he inappropriately touched the complainant, his juvenile niece

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3126(a)(7).
[2] 18 Pa.C.S.A. § 6301(a)(1)(ii).
[3] 18 Pa.C.S.A. § 6301(a)(1)(i).

(hereinafter, "Niece"), at two family gatherings and sleepovers held many years earlier.

On August 20, 2024, a jury convicted him of all charges, and on November 26, 2024, the trial court imposed a sentence of not less than three months nor more than 23 months' incarceration in Cumberland County prison on the Indecent Assault conviction, to which a concurrent sentence of three months to 23 months for felony Corruption of Minors was run.[4]   The trial court's sentencing order also directed Appellant to comply with registration requirements of SORNA with respect to both felony counts.   This appeal followed.

Appellant raises one issue for our review:

Did the trial court err in ruling that Defendant/Appellant's wife, Amber Weaver, was precluded from testifying about her own history of sexual abuse as an underlying reason for why she would have been diligent in watching the interactions of the adults and children at the family functions at issue at trial?

Brief for Appellant at 4.

Our standard of review of a trial court's rulings on the admissibility of evidence is well-settled:

In general, relevant evidence, *i.e.*, evidence that "logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable[,] or supports a reasonable inference or presumption regarding a material fact," is admissible. **Commonwealth v. Williams**, 586 Pa. 553, 896 A.2d 523, 539 (2006).   However, relevant evidence may be excluded if its

---

[4] The misdemeanor Corruption of Minors merged for purposes of sentencing.

> probative value is outweighed by the likelihood of unfair prejudice. *Id.* at 539 & n. 6 (citing Pa.R.E. 403). Admission of evidence rests within the sound discretion of the trial court, which must balance evidentiary value against the potential dangers of unfairly prejudicing the accused, inflaming the passions of the jury, or confusing the jury. *Commonwealth v. Flor*, 606 Pa. 384, 998 A.2d 606, 623 (2010). We will reverse a trial court's decision as to admissibility of evidence only if we conclude that the trial court has abused its discretion. *Id.*

*Commonwealth v. Jordan*, 65 A.3d 318, 324–25 (Pa. 2013)

At Appellant's criminal trial, the Commonwealth presented the testimony of then-14-year-old Niece,[5] who testified about the extended-family gatherings where relatives regularly would stay the night at the host's home. N.T., 8/19/24, at 79-81. She alleged that at two such gatherings Appellant inappropriately touched her.

Niece testified that the first incident occurred at her home when she was "five or six" years old. N.T. at 82. She maintained that she had grown tired during the party and went to her parents' bedroom to lie on their bed. N.T. at 84. While the adults continued their outdoor party near the garage or rec room, Appellant "just showed up" in the bedroom. N.T. at 84.

She thought he may have been going to the adjoining bedroom, which is accessible by a door in her parent's bedroom, but he stayed in the room. N.T. at 84. Niece testified that she eventually "asked [Appellant] to rub my back because I was a kid and I liked that. And he – he started – I was, like, laying on my stomach; and he started going down the back of my pants."

---

[5] Complainant Niece testified that her father's sister was married to Appellant, whom she called "Uncle Denny." N.T., 8/19/24, at 78.

N.T. at 82. She described how Appellant placed his hand underneath her underwear and began "rubbing" and "squeezing" her "butt cheeks." N.T. at 83.

Niece accused Appellant of touching her in a similar way at another party that Appellant and his wife, Amber Weaver, hosted when Niece was "between the time of, like five and seven [years old.]" N.T. at 86. She explained that she fell asleep during the party "while my parents were like – while all of the adults were out there [in an attached garage or "rec room" area] talking. And I woke up, and then I think [Appellant] took me into the living room or somebody did. And then he was, like, laying [sic] next to me [on the couch]. And his hand was in my pants." N.T. at 86. According to Niece, Appellant rubbed her vagina and her butt for about 10 minutes before she got up and went to the bathroom "because she didn't like it." N.T. at 88-89.

Niece testified that she kept these encounters a secret until she was 11 years old, when she confided in her trusted cousin Gabby, who is the same age as she is. N.T. at 93-94, 100, 103. Only then were police and the Children's Advocacy Center alerted. N.T. at 94.

To undermine the veracity of Niece, the defense intended to present the testimony of Appellant's wife, Amber Weaver, to explain "the relationship between — [what] she observed between [Appellant] and [Niece]." N.T. (pretrial conference), 8/20/24, at 26, During a pretrial conference, the Commonwealth had objected to any testimony from Amber Weaver claiming she has a "heightened alert when children are around" adults during functions

because of her own personal experience as a child victim of sexual abuse. N.T. at 27. The objection was in response to defense counsel's stated intention "to ask her whether she was – whether she tended to keep a close eye on children at these functions. And I believe she will say yes[,] and I believe she would say [']particularly because of my personal experience being sexually assaulted when I was young.[']" N.T. at 27.

The Commonwealth argued that the proposed testimony of Amber Weaver's personal history was irrelevant and prejudicial. Specifically, the prosecutor quoted Amber Weaver's testimony from the first trial, where she testified that she "wasn't tracking [Appellant's] moves [at the party] . . . , [h]owever, as a survivor of what we're talking about right now, I can tell you [that] you have a heightened alert when children are around." N.T. at 27. The prosecutor argued against a repeat of such testimony at the second trial:

> **Prosecutor:** Her personal experiences and the way that I expect it could come out is [her] saying ["]I reacted this way and [Niece] didn't and, therefore, [Niece] is not a victim of sexual abuse["] or ["]I'm a victim of sexual abuse, therefore I know when someone else is abused or abuse is happening.["] And I don't believe her personal experiences are appropriate [testimony].

N.T. at 27.

Defense counsel offered that Amber Weaver "will not comment on the veracity of [Niece's testimony]," N.T. at 27-28, but the trial court opined that the necessary implication of Amber Weaver's proposed testimony is that her history as a survivor of childhood sexual abuse makes her more likely than others to identify inappropriate adult-child interactions, that she saw no such

interaction between her husband and Niece, and, therefore, that the jury should question the veracity of Niece's testimony:

> **Trial Court:**     [Amber Weaver] need not comment on the veracity of [Niece's] testimony. . . . [A] wife testifying on behalf of a Defendant is assisting.  And the clear inference, implication is that she as a victim knows when someone else is or is not a victim. I will not allow her to testify that she's watching the children because she is a survivor, period.  Make sure she knows that, and don't lead her down the wrong path.

N.T.at 28.

Therefore, the trial court agreed with the Commonwealth's position that there was no recognized foundation for allowing Amber Weaver to share her history as a victim of sexual abuse.  N.T., 8/20/24, at 28.  Instead, the trial court ruled she could testify about her observations at the gatherings in question and describe the particular care with which watches over children at gatherings.

> You can certainly ask her whether she was present just as you can ask the father was he present, did he observe anything unusual, did she observe anything unusual.  She could say she watches closely, but she can't say why.

N.T. at 28-29.

With that, Amber Weaver took the stand and testified that at the family gatherings she "was not keeping an eye on every single person the entire time[,]" N.T. at 53, nor did she monitor either Niece or her husband specifically.  N.T. at 50.  She testified that she observed no unusual behavior from Niece towards her husband or from husband towards Niece during the gatherings referenced by Niece, N.T. at 49, and she did not notice both Niece

and her husband missing from the party at the same time. N.T. at 49-50. She agreed that "there could have been a time when the two of them may have been outside of [her] presence at the same time. . . ." N.T. at 50.

Appellant testified in his own defense. He acknowledged that it was possible that he could have been alone with Niece in the living room and in one of the bedrooms "for a brief period of time," but he denied "ever physically touching her on any other part of her body" other than when they would exchange hugs in the ordinary course of family greetings and farewells. N.T. at 63. At the conclusion of trial, the jury found Appellant guilty of all charges.

Appellant argues that because the Commonwealth relied almost exclusively on the alleged victim's testimony, the trial court erred by barring critical impeachment testimony from Amber Weaver that she, as a survivor of childhood sexual abuse herself, had a motive to watch adult/child interactions and noticed no concerning behaviors from either Appellant or Niece at their family get-togethers. Appellant claims such testimony was relevant under Pa.R.E. 402 for its intended use, which was not to establish that his wife was an expert in detecting abuse but to show her proclivity was to remain "keenly aware" of adult contacts with children.

The Commonwealth responds that the trial court's evidentiary ruling did not deprive Appellant of a fair trial, as it properly permitted Amber Weaver to testify that she was present at the events, watched the children closely as she typically does, and observed nothing unusual. She was also allowed to testify that she saw her husband and her niece together during such occasions and

never noticed any remarkable behavior from either person. To have allowed her to share her own history as a child victim of sexual abuse to explain why she remains keenly focused on adult-child interactions for the purpose sought by the defense, the Commonwealth continues, inappropriately would have conferred on her an expertise in sexual abuse victim behavior patterns and responses.

Appellant's focus on whether Amber Weaver's proposed testimony satisfied relevance requirements ignores the trial court's concern with the risk of unfair prejudice or confusion it carried. Specifically, the trial court opined that the necessary implication from her proposed testimony would be that her own experiences gave her special insight to detect concerning adult-child interactions behaviors that other adults would miss, and that, in this instance, she saw nothing between her husband and her niece to cause concern. To the extent the trial court thus excluded the defense proffer as inadmissible expert opinion offered to discredit Niece's incriminating account, we uphold its evidentiary ruling as consistent with controlling decisional law. **See Commonwealth v. Dunn**, 300 A.3d 324, 337 (Pa. 2023) (observing jurisprudence that precludes expert testimony concerning child victim responses and behaviors that touch upon witness credibility). Accordingly, we affirm.

Judgment of sentence Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/6/2025